# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEAUREGARD QUARTERS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-575-RLB** |
| **ACTION CONCRETE CONSTRUCTION, INC.** | **CONSENT** |

## ORDER

Before the Court is Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim in Response to Plaintiff's Complaint ("Motion to Dismiss"). (R. Doc. 6). The motion is opposed. (R. Doc. 11). Defendant filed a Reply. (R. Doc. 20).

### I. Background

On or about July 27, 2020, Beauregard Quarters, L.L.C. ("BQ" or "Plaintiff") initiated this action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendant Action Concrete Construction, Inc. ("ACC" or "Defendant"). (R. Doc. 1-3 at 4-9, "Petition").

BQ is the owner of a four-story apartment complex named "Elias" that was completed in 2018 (the "Project"). (Petition ¶ 3). BQ alleges that it entered into a Construction Management Agreement ("CM Contract") with GSD Development Company, LLC ("GSD"), in which GSD agreed to be BQ's agent/mandatory and Construction Manager on the Project. (Petition ¶ 4). BQ alleges that pursuant to the CM Contract, (1) GSD entered into a Subcontract Agreement with ACC for certain framing work in exchange for the payment of $147,864.50, (2) BQ made $124,468.38 in payments to ACC, and (3) ACC breached the Subcontract Agreement by abandoning the Project without cause, performing the work with a voluminous list of construction defects, and otherwise increasing costs to BQ. (Petition ¶¶ 8-10). GSD issued a

Notice of Default to ACC on June 8, 2017 detailing the alleged deficiencies. (Petition ¶ 15; *see* R. Doc. 1-4).

BQ seeks relief under the Subcontract Agreement for abandonment, delay, and breach of duty. (Petition ¶ 11-15). BQ alleges that in light of ACC's abandonment of the Subcontract Agreement, it incurred damages when it was forced to hire certain other subcontractors to complete the work and also incurred three months of delay damages, which BQ seeks to recover under Louisiana Civil Code article 1994[1] and Louisiana Civil Code article 2769.[2] (Petition ¶ 11-13). BQ also alleges that ACC breached the Subcontract Agreement by "failing to perform its scope of work in a workmanlike manner," resulting in damages recoverable under Louisiana Civil Code article 1994. (Petition ¶ 14).

In addition, BQ asserts that "it is a third party beneficiary of the Subcontract Agreement" between ACC and GSD, as the Subcontract Agreement provides that ACC "would perform a specified scope of work on the project, owned by and for BQ's benefit." (Petition ¶ 16). BQ alleges that ACC "knew and understood that: (1) the Project was built for the benefit of BQ, (2) GSD managed the construction of the Project on behalf of BQ and (3) all progress payments were remitted to ACC by BQ." (Petition ¶ 16).

On September 2, 2020, ACC removed the action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). BQ sought remand for lack of subject matter jurisdiction. (R. Doc. 8). The motion was denied. (R. Docs. 21, 23).

---

[1] "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." La. Civ. Code art. 1994.
[2] "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." La. Civ. Code art. 2769.

1

On September 16, 2020, ACC filed the instant Motion to Dismiss, which argues that this case must be dismissed because (1) there is no privity of contract between the parties and (2), with respect to the third-party beneficiary claim, there is no written stipulation *pour autrui* in favor of BQ. (R. Doc. 6).

The parties have since consented to proceed before the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). (R. Docs. 35, 39).

## II.     Law and Analysis

### A.     Legal Standards for Motion to Dismiss

The instant Motion to Dismiss seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the

---

[3] It appears that ACC erred in setting forth the legal standard for Rule 12(b)(1), which considers whether a complaint fails to state a claim upon which subject-matter jurisdiction can be founded. (R. Doc. 6-1 at 2-3). BQ seizes upon this error to argue that it agrees this Court lacks subject matter jurisdiction, and the case should be remanded to state court. (R. Doc. 11 at 2). ACC does not address this error in its Reply Memorandum. (R. Doc. 20). At any rate, neither party sets forth grounds for remanding this action for lack of subject matter jurisdiction. Accordingly, the Court need not reconsider its previous ruling denying remand. (*See* R. Docs. 21, 23).

elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### B. Breach of Contract

ACC argues that "all of BQ's claims for relief are barred because BQ . . . has no privity of contract with ACC, and therefore, lacks standing to raise contractual claims against ACC in any form." (R. Doc. 6 at 1). Specifically, ACC claims that it did not undertake any obligation to perform for BQ and has no contractual relationship with BQ. (R. Doc. 6-1 at 4). ACC argues that the written Subcontract Agreement with GSD controls, including Section 1.3, which provides: "The Subcontract Documents shall not be construed to create a contractual relationship of any kind . . . (2) between the Owner [BQ] and the Subcontractor [ACC], or (3) between any persons or entities other than the Contractor [GSD] and the Subcontractor [ACC]." (R. Doc. 6-4 at 2).

In opposition, BQ argues that privity of contract is not required because the CM Contract constitutes a contract of mandate between BQ and GSD, through which GSD is authorized to enter into agreements, such as the Subcontract Agreement, on behalf of BQ. (R. Doc. 11 at 1, 4). BQ argues that it has alleged the elements for breach of contract and the specific language of the written Subcontract Agreement does not control because it was not, in fact, executed by GSD. (R. Doc. 11 at 5-6).

3

Under Louisiana law, no action for breach of contract may lie in the absence of privity of contract between the parties. *Pearl River Basin Land and Dev. Co., L.L.C. v. State, ex rel. Governor's Office of Homeland Sec. and Emergency Preparedness,* 29 So. 3d 589, 592 (La. App. 1st Cir. 2009); *see Sanderson v. H.I.G. P-XI Holding, Inc.*, No. 99-3313, 2000 WL 1042813, at *3 (E.D. La. July 27, 2000) ("It is beyond dispute that privity between a plaintiff and defendant is necessary to the maintenance of an action on a contract."). Accordingly, the issue is whether BQ can seek recovery for breach of contract under the Subcontract Agreement, whether executed as written or otherwise, in light of its contractual relationship with GSD.

In Paragraphs 4-7 of the Petition, BQ alleges that the CM Contract constitutes a contract of mandate through which GSD agreed to serve as BQ's agent/mandatary:

**CM CONTRACT – MANDATARY**

4.

GSD and BQ entered into a Construction Management Agreement ("CM Contract") wherein GSD agreed to be BQ's agent/mandatary and Construction Manager on the Project. Pursuant to the CM Contract:

- GSD was to (as a non-exhaustive list) furnish construction administration and management services, construction supervision, the means and methods of construction, and <u>to subcontract with all the subcontractors and laborers</u> on the Project.
- BQ was responsible for (as a non-exhaustive list) the <u>payment of all costs</u> associated with the construction Project.

5.

GSD performed its obligations by managing, supervising, and subcontracting with subcontractors on the Project.

6.

The CM Contract further provides:

- The Work that shall be performed under subcontracts, labor agreements or by other appropriate agreements with the Construction Manager <u>for the benefit of the Owner.</u>
- <u>The Owner and Construction Manager respectfully bind themselves</u>, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to <u>covenants, agreements and obligations contained in the Contract Documents</u>.

7.

BQ states that the CM Contract provided GSD with the authority to subcontract with and manage ACC on the Project on behalf of BQ. ACC was aware of the agency relationship between BQ and GSD as all progress payments issued to ACC for work performed on the Project were remitted by BQ.

(Petition ¶ 4-7) (emphasis in the original).[4]

In opposing dismissal, BQ argues that it entered into a contract of mandate with GSD, GSD (as mandatary) entered into a contract with ACC on behalf of BQ (as principal), and, accordingly, BQ has a direct cause of action for breach of contract against ACC. Having considered the applicable law, the Court finds that BQ has sufficiently alleged that it entered into a contract of mandate with GSD, which, if true and otherwise not precluded by the Subcontract Agreement, allows BQ to seek recovery directly against ACC for breach of contract.

"Under Louisiana law, the relationship of mandate has become equated with the common law principal-agent relationship." *Gerdes v. Estate of Cush*, 953 F.2d 201, 204 (5th Cir. 1992) (citation omitted). Specifically, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." *See* La. Civ. Code art. 2989; *see McLin v. Hi Ho, Inc.*, 118 So.3d 462, 467-68 (La. App. 1st Cir. 2013). "A mandatary's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by

---

[4] BQ further alleges that the GM Contract is attached to the Petition. (Petition ¶ 4). The copy of the Petition submitted by ACC with the Notice of Removal, however, does not include a copy of the GM Contract.

his conduct." *Boulos v. Morrison*, 503 So.2d 1, 3 (La. 1987). When the mandatary discloses the identity of the principal or the existence of a mandatary relationship to the third person, the third person is bound to the principal for the performance of the contract. *See* La. Civ. Code art. 3022. When the mandatary relationship is not disclosed to the third person, the third person is still bound to the principal for the performance of the contract unless the obligation is strictly personal or the right-assignable. *See* La. Civ. Code art. 3023; *see Woodlawn Park Limited Partnership v. Doster Construction Co.*, 632 So.2d 645 (La. 1993).

Tellingly, ACC does not argue that BQ has insufficiently alleged that it entered into a contract of mandate with GSD, or that the alleged mandatary relationship was not disclosed to ACC when it entered into the Subcontract Agreement. Instead, ACC argues that the terms of the Subcontract Agreement with GSD, as written, precludes recovery by BQ even if there is a mandatary relationship between BQ and GSD. The copy of the Subcontract Agreement provided to the Court is not signed by both parties.

Whether the written Subcontract Agreement has any bearing on ACC's duties with respect to BQ hinges in part upon a factual determination of whether any such agreement was ever entered, and a determination as to the terms of any such contract between GSD and ACC, whether written or oral. This factual dispute that cannot be resolved in the context of the instant Motion to Dismiss.[5]

At this stage of the proceeding, it is sufficient for the Court to find that BQ has alleged it entered into a contract of mandate with GSD, and that GSD (in its role as a mandatary) entered

---

[5] The Court notes that in a related action filed by GSD against ACC, ACC filed a Motion for Summary Judgment in support of which ACC states there is no dispute that "[a]lthough several drafts were exchanged between them, GSD and ACC **did not** enter into a written contract." *GSD Development Co., LLC v. Action Concrete Construction, Inc. et al.*, No. 19-159-BAJ-SDJ, ECF No. 33-1 at ¶3 (M.D. La. Sept. 21, 2020) (emphasis added). ACC, however, seeks this Court to apply that same written contract in the context of its Rule 12(b)(6) motion.

into a contract with ACC. Based on the foregoing, the Court concludes that BQ has sufficiently alleged a cause of action for breach of contract against ACC.

      **C.**      **Third-Party Beneficiary**

ACC also moves to dismiss BQ's third-party beneficiary claim on the basis that there is no written stipulation *pour autrui* in favor of BQ. (R. Doc. 6-1 at 4-5). ACC argues that the written Subcontract Agreement, particularly Section 1.3, precludes any third-party benefit to BQ. (R. Doc. 6-1 at 4). ACC further argues that because the Subcontract Agreement was written, any stipulation *pour autrui* in favor of BQ must also be written. (R. Doc. 6-1 at 5). In opposition, BQ argues that the Subcontract Agreement was in fact an oral agreement and, accordingly, the stipulation *pour autrui* need not be in writing.

Louisiana law provides that "[a] contracting party may stipulate a benefit for a third person called a third-party beneficiary." La Civ. Code art. 1978. The contract for the benefit of a third party is commonly referred to as a stipulation *pour autrui. Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary,* 939 So.2d 1206, 1211 (La. 2006). In *Joseph*, the Supreme Court of Louisiana held that there are three criteria for determining whether contracting parties have created a stipulation *pour autrui*: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Id.* at 1212. A stipulation *pour autrui* is not required to be in writing unless the parties limited themselves to only a written contract. *Id*. at 1215. A third-party beneficiary has the right to demand performance under a contract. *See* La. Civ. Code art. 1981.

If BQ can successfully establish that it has a direct breach of contract action against ACC in light of its mandatary relationship with GSD, then BQ need not seek recovery under the

Subcontract Agreement as a third-party beneficiary. If, however, BQ's breach of contract claim fails, it has alleged sufficient facts with respect to the existence of stipulation *pour autrui* to seek recovery, in the alternative, as a third-party beneficiary.

As stated above, whether ACC and GSD entered into a written Subcontract Agreement necessitating a written stipulation *pour autrui*, is a factual dispute that cannot be resolved on the pleadings. If there was an oral agreement, it is left to be determined whether that oral agreement manifested a clear intention that BQ was a third-party beneficiary. The Court finds that BQ has sufficiently alleged at the pleading stage, in the alternative to its breach of contract claims, that it is entitled to recover as a third-party beneficiary under the Subcontract Agreement.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion To Dismiss For Failure to State a Claim Pursuant to Rule 12(b)(6) (R. Doc. 6) is **DENIED**.

Signed in Baton Rouge, Louisiana, on July 13, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**